**In re CALIFORNIA EASTERN
AIRWAYS, Inc.
No. 1462.**

United States District Court,
D. Delaware.
May 18, 1951.

John L. Conners (of Bigham, Englar, Jones & Houston), of New York City, for claimant.

William Marvel (of Morford, Bennethum, Marvel & Cooch) and David F. Anderson (of Southerland, Berl & Potter), of Wilmington, Del., for Debtor.

LEAHY, Chief Judge.

This is a review of the decision and conclusions of the Referee in bankruptcy acting as Special Master with respect to a claim for $12,834.85 in an Arrangement Proceeding of the Debtor. The facts were stipulated between the parties. On January 24, 1947, Bullock's, Inc., the claimant (hereinafter referred to as Bullock's), delivered in New York to Debtor, California Eastern Airways, Inc., a Delaware corporation (hereinafter referred to as California Eastern) three shipments of merchandise to be carried by California Eastern to Los Angeles, California, where Bullock's operates a store. The merchandise consisted of 137 cartons, weighing about 2,343 pounds, of clothing and millinery in good order and condition. California Eastern was a nonscheduled cargo air carrier engaged in in-

terstate air transportation of property for hire between New York and California and certain intermediate points. The merchandise was accepted and received and California Eastern undertook and agreed to transport the goods by air from New York City to Los Angeles and there to make delivery to Bullock's subject to the terms and conditions of a certain contract between Bullock's and California Eastern, dated November 25, 1946. While the three shipments were being transported aboard a plane operated by California Eastern, along with other shipments owned by others, the plane encountered a heavy downdraft in flight somewhere over Colorado. The downdraft created an emergency which endangered the safety of the plane, its cargo, crew and others aboard, and in order to lighten the plane and to save it, its cargo, crew and others, 57 cartons, weighing 777 pounds, owned by Bullock's and included in the three shipments, were cast overboard by members of the crew. As a result of the jettisoning of part of Bullock's property, the plane, its remaining cargo and persons aboard were saved and the plane arrived safely at its destination. The property jettisoned, which had a fair market value of $12,834.85, has never been recovered. Claimant Bullock's made demand for reimbursement on Debtor for the fair market value of the property but the latter refused to pay.

After Debtor came under the jurisdiction of this court in Arrangement Proceedings under the provisions of Chapter XI of the Bankruptcy Act [1] claimant on July 29, 1948, filed its claim for $12,834.85 against Debtor's assets. Debtor objected to the full claim of $12,834.85 but added: "The debtor admits a liability * * * limited to $1,171.50, and claims a set-off of $127.40 due Debtor on account of unpaid freight charges. The net liability therefor is $1,- 044.10." [2] The Special Master (the Referee) appointed to hear and determine claims against Debtor made no formal Findings of Fact but did make certain Conclusions of Law predicated upon the written stipulation of facts filed by the parties. He held, in substance, that California Eastern acted as a private or contract carrier of the merchandise; [3] that the measure of Debtor's liability for the safe transportation and carriage of the goods was fixed by the agreement dated November 25, 1946 and the pertinent airbills; [4] that the values of the several shipments were declared in each of the airbills and that the declared valuations were binding on the parties [5]; that the airbills were made expressly subject to the terms and conditions of the agreement of November 25, 1946 [6]; that the loss of Claimant's merchandise did not arise out of any negligence on the part of the carrier (Debtor), but was caused by an emergency; and that the jettisoning was necessary to save the plane, the goods and persons aboard [7]; that Debtor was liable to Claimant, under the terms of the agreement, for the loss sustained [8]; that the measure of liability was that provided under paragraph "5" of the agreement, to-wit, 50¢ per pound, gross weight unless a greater value was declared [9]; that no greater value was declared, and that the liability of Debtor was determined by the declarations of value on the airbills [10]; and that the amount of Debtor's liability was $388.50, less a setoff of $127.40 for unpaid freight charges. [11]

Claimant has filed exceptions to Conclusions of Law Nos. "3", "5", "7", "8" and "9". For purposes of logical presentation, these exceptions were argued by counsel somewhat out of chronological order and will be discussed in that fashion.

1. Claimant asserts Conclusion of Law No. "5" is contrary to the evidence and the

1. 11 U.S.C.A. ch. XI, §§ 701–799.
2. Stipulation, No. XII.
3. Conclusion of Law No. "1".
4. Conclusion of Law No. "2".
5. Conclusion of Law No. "3".
6. Conclusion of Law No. "4".
7. Conclusion of Law No. "5".
8. Conclusion of Law No. "6".
9. Conclusion of Law No. "7".
10. Conclusion of Law No. "8".
11. Conclusion of Law No. "9".

law. It considers Conclusions of Law No. "5" and No. "6" contradictory in that No. "6" states Debtor "was liable to claimant under the terms of the agreement in effect, for the loss sustained" while No. "5" seems to deny liability in that it states the jettisoning "did not arise out of any negligence on the part of the carrier (the Debtor), but was caused by an emergency. * * *". Bullock's does not dispute that in the ordinary situation a bailee is liable only in the event of loss or damage resulting from his negligence. It further admits a bailee may rebut a presumption of negligence, arising out of a failure to deliver goods which were delivered to the bailee in good order and condition, by the defense of "act of God"; but proof thereof, however, does not relieve the bailee of liability if his negligence contributed thereto. More than that, assuming that the downdraft here was an act of God, in the ordinary case, Bullock's argues, some proof of negligence such as overloading, lack of airworthiness, improper piloting, disregard of weather reports, failure to follow operating or routing instructions, or the like would have been necessary to establish liability of the carrier. But here, it is claimed, and this is the nub of Bullock's argument, no such proof was necessary because Debtor by its "deliberate admission of liability" in the stipulation of facts,[12] obviated the need for such proof. Bullock's argument rests on the interpretation it affixes to Debtor's words, in part quoted above, in its objection to the claim.

I agree with the implied holding of the Special Master that Debtor in admitting "liability" was merely stating that it was, *by the terms of the contract* of November 25, 1946, liable to pay to Bullock's the sum of 50¢ per pound for any loss suffered by Bullock's in the absence of any greater value declared by Bullock's and absent any proof of negligence of Debtor.

■ That this is the correct interpretation of Debtor's words is manifestly seen when it is asked, "on what basis did Debtor decide it was liable in the amount of $1,171.50?" The total weight of Bullock's entire shipment was 2,343 pounds. When the total weight is multiplied by 50¢ per pound (the contractual amount of liability which must be used since Bullock's did not declare any excess value), the result is the sum of $1,171.50, the exact figure set forth by Debtor in stipulation No. "XII". In fact, only part of the 2,343 pounds was jettisoned. The 777 pounds actually lost, multiplied by 50¢, i. e., $388.-50, is the proper amount which Bullock's is entitled to recover under its contract with California Eastern. The fact Debtor mistakenly computed its contractual liability on the basis of a loss of the entire shipment did not bar it from bringing forward to the Special Master's attention the actual fact that only 777 pounds of Bullock's property was lost. Bullock's assertion now that it relied on Debtor's words as disposing once and for all of the issues of negligence and liability, is without merit for Debtor's admission of its *contractual* liability was not in any sense a legal admission of *negligence* on its part.

■ If Bullock's desired to be covered for any loss in excess of 50¢ per pound in a situation such as this, where there is no evidence the carrier-debtor was negligent, Bullock's could have declared the excess value and paid for such protection according to the terms of the November 25, 1946 agreement. Bullock's apparently decided such additional protection was unnecessary. Accordingly, it is bound by the terms of its contract.

■ 2. The second point of Bullock's position is that assuming *arguendo* the 50¢ per pound limitation is applicable, the minimum liability of Debtor is $1,171.50 rather than the $388.50 found by the Special Master. Bullock's, in excepting to Conclusions of Law Nos. "3", "7", "8" and "9", seeks to draw a distinction between the "amount" of the carrier's liability and the "fact" of liability. Bullock's point is that the 50¢ per pound valuation provision in paragraph No. "5" of the agreement[13] was

---

12. Stipulation, No. XII, see n. 2, supra.

13. "5. With respect to non-perishable cargo only, the Carrier has provided insurance against all risks of physical

inserted solely for insurance purposes and it had no application to a situation such as is here presented where the carrier admitted liability for loss of merchandise. But, as I have noted, the admission of "liability" by Debtor was not an admission of negligence; and, therefore, paragraph No. "5" of the agreement is applicable, since it governs the carrier's liability for any loss not the result of its negligence.

Bullock's contention that it is entitled to at least $1,171.50 calls for discussion of paragraph "9" of the contract.[14] Claimant argues paragraph "9" applies to the instant case because negligence has been admitted. But, in fact, negligence has not been admitted and paragraph "9" does not apply since, from my reading of it, it is only applicable to a situation where the carrier is, in truth, negligent. The short of the matter is Bullock's has not shown Debtor to have been negligent and Debtor has not admitted negligence. Absent negligence of the carrier, the provision of paragraph "9" referring to paragraph "5" applies; and paragraph "5" governs this case.[15]

3. I conclude the contract of November 25, 1946, between Bullock's and Debtor is free from doubt or ambiguity. The report of Stewart Lynch, Esq., Special Master, as to the claim under review will be adopted; all objections thereto are overruled; and the recommendation of the Special Master that the claim of Bullock's be allowed in the sum of $388.50, less the set-off of $127.-40 for freight charges admitted to be owing by Bullock's to Debtor, is affirmed.

loss or damage to such non-perishable cargo carried hereunder from any cause whatsoever occurring after acceptance of said cargo by the Carrier at point of origin and before delivery by Carrier at point of destination.

"The insurance provided shall not exceed $50.00 for any one shipment of 100 pounds or less, or 50¢ per pound, gross weight, for any shipment in excess of 100 pounds, unless a greater value is declared, paid for and stated on the Airbill. In no case, however, shall this insurance exceed the actual value of the shipment.

"If a value is declared in excess of the released valuation as stated above, such excess value will be charged for at the rate of 10¢ per $100.00 declared value."

14. "9. The Carrier will hold the Shipper harmless against public liability and property damage claims of third parties resulting from the operation of the aircraft by the Carrier, provided that the Shipper promptly notify the Carrier of all such claims made against the Shipper, and, in the event of an accident involving the aircraft or its cargo, will also hold the Shipper harmless against loss or damage to the extent of the Carrier's liability therefor up to the actual value of the cargo, but not to exceed $100,000 per plane load; but in any event the Carrier shall not be liable for any loss, damage or delay other than directly attributed to negligence on the part of the Carrier except as provided in Paragraph 5 above. The Carrier, if requested, shall furnish the Shipper with a copy of insurance policies or certificates which shall be satisfactory to the Shipper in all respects."

15. The situation in Taccetta v. Chauncey Rice & Rogovin, Inc., D.C.S.D.N.Y., 75 F.Supp. 373, cited by Bullock's, is not applicable to the case at bar unless it be first assumed that Debtor was negligent. That is not the case, here, in fact or in law.